IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| CODY WRIGHT, | )<br>) |
| Plaintiff | ) Case No. 1:18-cv-0118 (Erie)<br>) |
| vs. | )<br>) |
| | ) RICHARD A. LANZILLO |
| SCHICK, Corrections Office at | ) UNITED STATES MAGISTRATE JUDGE |
| SCI Forest; J.M. BEATTY, Corrections | ) |
| Officer at SCI Forest; OFFICER BARNES, | ) |
| Corrections Officer at SCI Forest, | ) OPINION AND ORDER ON |
| | ) DEFENDANTS' MOTION FOR |
| Defendants | ) SUMMARY JUDGMENT<br>) |
| | ) ECF NO. 47 |

Plaintiff Cody Wright (Wright) commenced this action pursuant to 42 U.S.C. §1983 to recover damages for alleged violations of his constitutional rights stemming from his second-hand exposure to pepper spray in the prison where he was previously incarcerated. ECF Nos. 3, 19. The Defendants have filed a Motion for Summary Judgment. For the reasons discussed below, the Court will deny the motion.[1]

I.  Procedural History

On April 23, 2018, Wright initiated this action against three corrections officers at the Pennsylvania Department of Corrections State Correctional Institution at Forest (SCI-Forest), Officer Schick, Officer J.M. Beatty, and Officer Barnes.[2] ECF Nos. 3, 19. On August 6, 2019, following the close of discovery, the Defendants filed their motion for summary judgment (ECF

---

[1] The parties have consented to the jurisdiction of the undersigned United States Magistrate Judge to conduct all proceedings in this case, including the entry of final judgment, as authorized by 28 U.S.C. § 636. ECF No. 6; ECF No. 22.

[2] Wright's original Complaint incorrectly spelled Schick's name as "Shipe" and included a "John Doe" defendant designation. Wight later amended his Complaint to correct the spelling of Schick's name and to substitute Barnes for the John Doe defendant. ECF No. 19, ¶¶ 4, 6. The Amended Complaint is the operative pleading.

1

No. 47), supporting brief (ECF No. 48) and concise statement of material facts (ECF No. 49). On October 1, 2019, Wright filed his brief in opposition to the Defendants' motion (ECF No. 60) and responsive concise statement (ECF No. 61). He also filed a further memorandum in opposition to the summary judgment motion. ECF No. 62. Thus, the matter has been fully briefed and is ready for disposition.

II.     Material Facts

Unless otherwise noted, the material facts of this case are undisputed. *See* ECF No. 49 (Defendants' Concise Statement); ECF No. 61 (Wright's Responsive Concise Statement). On September 5, 2017, Wright was sprayed with pepper spray by prison officials.[3] He complains that this exposure caused him pain. ECF No. 49, ¶ 1; ECF No. 61, ¶ 1. Two days later, on September 7, 2017, at approximately 8:00 pm, prison personnel used pepper spray to subdue an inmate in a cell next to Wright's. *Id.* at ¶ 6; *id.* at ¶ 6. Typically, and whenever possible, the air handlers/ventilation systems in the prison are deactivated before pepper spray is used. *Id.* at ¶ 7; *id.* at ¶ 7. That was not possible on September 7, 2018, however, because of the emergent nature of the situation. *Id.* at ¶ 8; *id* at ¶ 8. Within a minute after the discharge, prison personnel were able to deactivate the air handlers. *Id.* at ¶ 7; *id.* at ¶ 7. Prison personnel in the area also experienced the second-hand effects of the pepper spray discharge. *Id.* at ¶ 9; *id.* at ¶ 9.

At this point, the Parties' versions of events diverge. Wright maintains that after the use of pepper spray in the neighboring cell, he "continuously pressed the in-cell emergency call button and asked for medical attention because the OC mace fumes made Plaintiffs [sic] asthma flare up and Plaintiff [sic] breathing was restricted causing chest pain, shortness of breath, weakness and

---

[3] The terms "pepper spray," "O.C. spray," and "mace" are used interchangeable in this Court's jurisprudence and denote the same thing. *See, e.g., Enoch v. Perry*, 2019 WL 2393783, *1, n.2 (W.D. Pa. June 6, 2019); *Benson v. Wetzel*, 2019 WL 2393799, *5 (W.D. Pa. June 6, 2019) (citing *Banks v. Mozingo*, 423 Fed. Appx. 123, 126-27 (3d Cir. 2011). Here, the Court will use the term "pepper spray."

2

dizziness." ECF No. 19, ¶ 10. He asserts that Officer Barnes responded over the in-cell intercom that "he was not going to get medical attention..." *Id.* Wright further claims he pressed the in-call emergency button more than four times over the course of the next hour, complaining of chest pains and asthma-related difficulties, but Barnes denied him medical attention each time. *Id.* at ¶ 11. Wright claims that over the course of the hour following the pepper spray discharge, he faded "in and out of consciousness and having extreme dizzy spells until Plaintiff finally collapsed on the floor and blacked out." *Id.* at ¶ 12. He claims that Shick noticed him on the floor of his cell and shined a flashlight in his face but walked away without getting Wright medical attention. *Id.* at ¶ 13. Wright makes the same allegation against Beatty: "[Beatty] was flashing his flashlight in Plaintiff's face, asking Plaintiff "Are you dead yet?" and then Beatty "walked away without informing medical" as Wright remained unresponsive. *Id.* at ¶ 14.

The Defendants have a different view. They state that a nurse evaluated Wright an hour after exposure to the pepper spray and that Wright neither complained about the effects of the pepper spray nor showed any symptoms of exposure. ECF No. 49, ¶¶ 11, 12. The Defendants also maintain that the next day, Wright was seen by a different nurse, who noted Wright was breathing normally as he stood by his cell door. *Id.* at ¶ 15.

Both Defendants and Wright rely upon video evidence in support of their respective positions. For example, in their Concise Statement of Material Facts, the Defendants state that "a review of video showed that Plaintiff showed no ill effects from the OC used on the inmate in the next door cell, and he calmly adjusted his covers and arranged his bed before lying down and going to sleep." ECF No. 49, ¶ 13. Wright, in response, maintains that the same video evidence supports his version of events. ECF No. 61, ¶13. Despite each party's reliance upon the video, it has not been included in the summary judgment record for reasons discussed more fully below.

3

III. Standard of Review

Federal Rule of Civil Procedure 56(a) requires the court to enter summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Under this standard "the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). A disputed fact is "material" if proof of its existence or nonexistence would affect the outcome of the case under applicable substantive law. *Anderson*, 477 U.S. at 248; *Gray v. York Newspapers, Inc.*, 957 F.2d 1070, 1078 (3d Cir. 1992). An issue of material fact is "genuine" if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *Anderson*, 477 U.S. at 257; *Brenner v. Local 514, United Bhd. of Carpenters and Joiners of Am.*, 927 F.2d 1283, 1287-88 (3d Cir. 1991).

When determining whether a genuine issue of material fact remains for trial, the court must view the record and all reasonable inferences to be drawn therefrom in favor of the nonmoving party. *Moore v. Tartler*, 986 F.2d 682 (3d Cir. 1993); *Clement v. Consol. Rail Corp.*, 963 F.2d 599, 600 (3d Cir. 1992); *White v. Westinghouse Electric Co.*, 862 F.2d 56, 59 (3d Cir. 1988). To avoid summary judgment, however, the nonmoving party may not rest on the unsubstantiated allegations of his or her pleadings. Instead, once the movant satisfies its burden of identifying evidence that demonstrates the absence of a genuine issue of material fact, the nonmoving party must to go beyond his pleadings with affidavits, depositions, answers to interrogatories or other record evidence to demonstrate specific material facts that give rise to a genuine issue. *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986).

Further, under Rule 56, a defendant may seek summary judgment by pointing to the absence of a genuine fact issue on one or more essential claim elements. The Rule mandates summary

4

judgment if a plaintiff then fails to make a sufficient showing on each of those elements. When Rule 56 shifts the burden of production to the nonmoving party, "a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Id.*, at 323. *See also Harter v. G.A.F. Corp.*, 967 F.2d 846, 851 (3d Cir. 1992).

Wright is proceeding pro se. A filing from a pro se litigant is to be "liberally construed" and a "pro se complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89. 94 (2007) (quoting *Estelle v. Gamble*, 429 U.S. 97, 206 (1976)). Additionally, when considering a motion in a pro se plaintiff's case, a court must "apply the applicable law, irrespective of whether a pro se litigant has mentioned it by name." *Holley v. Dep't of Veteran's Affairs*, 165 F.3d 244, 247-48 (3d Cir. 1999). On a motion for summary judgment, however, "a pro se plaintiff is not relieved of his obligation under [Federal Rule of Civil Procedure] 56 to point to competent evidence in the record that is capable of refuting a defendant's motion for summary judgment." *Dawson v. Cook*, 238 F. Supp. 3d 712, 717 (E.D. Pa. 2017) (citation omitted). Put another way, just because a non-moving party is proceeding pro se, they are not relieved of their "obligation under Rule 56(c) to produce evidence that raises a genuine issue of material fact." *Id.* (quoting *Boykins v. Lucent Techs., Inc.*, 78 F. Supp. 2d 402, 408 (E.D. Pa. 2000)); *see also Winfield v. Mazurkiewicz*, 2012 WL 4343176, *1 (W.D. Pa. Sept. 21, 2012).

IV.     Discussion

Wright contends that the Defendants violated his rights under the Eighth and Fourteenth Amendments through their deliberate indifference to his serious medical needs.[4] *Id.* at ¶ 20. He faults Shick and Beatty for deliberately denying him access to medical treatment and care, and for

---

[4]Although Wright also invokes the Fourteenth Amendment in his Amended Complaint, this cannot provide the basis for a claim on these facts as any Fourteenth Amendment claim is subsumed by the more explicit text of the Eighth Amendment. *United States v. Lanier*, 520 U.S. 259, 272 n.7 (1997). In the prison context specifically, "the Eighth Amendment serves as the primary source of substantive protection." *Graham v. Conner*, 490 U.S. 386, 395 n.10 (1989) (quoting *Whitley v. Albers*, 475 U.S. 312, 327 (1986)).

5

failing to take steps to prevent his "pain, suffering, physical injury, and emotional distress." *Id.* at ¶ 21. He brings a similar claim against Barnes, the difference appearing to be that Shick and Beatty witnessed his distress while Barnes only "knew of" of his medical distress. *Id.* at ¶¶ 21-22.

At the outset, the Court notes that the use of pepper spray is not "a per se violation of the Eighth Amendment." *Geter v. Dauphin Cty. Prison Authorities*, 2019 WL 522693, *6 (M.D. Pa. Feb. 11, 2019) (quoting *Passmore v. Ianello*, 528 Fed. Appx 144, 147 (3d Cir. 2013) (citations omitted); *see also Taylor v. Pennsylvania*, 2018 WL 6574187, at *17 (M.D. Pa. Dec. 12, 2018)). Rather, "[t]he use of mace, tear gas or other chemical agent of the like nature when reasonably necessary to prevent riots or escape or to subdue recalcitrant prisoners does not constitute cruel and inhuman punishment." *Id.* at 147-48 (internal citations omitted). That does not mean, however, that in some instances, its use cannot amount to a constitutional violation. *See, e.g., Robinson v. Danberg*, 673 Fed. Appx 205, 212 (3d Cir. 2016) (reversing entry of summary judgment in favor of the defendant on claim that the plaintiff was maced in violation of his Eighth Amendment rights). Viable claims arising out of a discharge of pepper spray typically fall within one or both of two categories: conditions of confinement and deliberate indifference to serious medical needs.

Here, rather than challenging prison personnel's specific use of pepper spray on September 5 or 7, 2017, or alleging that the prison's use of it created unconstitutional conditions of confinement, Wright is asserting that the Defendants denied him necessary medical care by refusing to address the after-effects of his second-hand exposure to pepper spray. As such, his claims fall within the purview of *Estelle v. Gamble*, 429 U.S. 97 (1976), wherein the United States Supreme Court held that the infliction of unnecessary suffering on a prisoner by failing to treat his serious medical needs is a violation of the Eighth Amendment. *Id.* at 106.

"The standard enunciated in *Estelle* is two-pronged: '[i]t requires deliberate indifference on the part of the prison official and it requires the prisoner's medical needs to be serious.'" *Monmouth*

6

*Cty. Corr. Inst. Inmates v. Lanzaro*, 834 F.2d 326, 346 (3d Cir. 1987) (quoting *West v. Keve*, 571 F.2d 158, 162 (3d Cir. 1978)). To show deliberate indifference, the Supreme Court has held that the standard is a subjective one: "the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer v. Brennan*, 511 U.S. 825, 837 (1994). A medical need is "serious" if it is "one that has been diagnosed by a physician as requiring treatment or one that is so obvious that a lay person would easily recognize the necessity for a doctor's attention." *Monmouth Cty. Corr. Inst. Inmates*, 834 F.2d at 346 (quoting *Pace v. Fauver*, 479 F. Supp. 456, 458 (D.N.J. 1979)). The seriousness of the medical need may also be determined by the effect of denying the particular treatment.[5] *Id.* at 347.

In his verified complaint, Wright alleges that Shick and Beatty

> knew of and witnessed the serious medical need and immediate danger posed to Plaintiff but deliberately denied Plaintiff access to medical treatment and care or take any appropriate actions that would have prevents Plaintiff pain, suffering, physical injury and emotional distress thereby violating Plaintiff's eighth and Fourteenth Amendment rights under the United States Constitution.

ECF No. 19, ¶ 21.[6] Wright specifically alleges that he "continuously pressed the in-cell emergency call button" because the mace fumes "made [his] asthma flare up and [his] breathing was restricted causing chest pain, shortness of breath, weakness and dizziness." *Id.* ¶ 10. Wright avers that he faded in and out of consciousness before eventually blacking out. Id. ¶¶ 12-13. Upon observing his

---

[5] Relying on a case from the Western District of Wisconsin, *Lindsey v. Boughton*, 2018 WL 3824143, at *4 (W.D. Wis. Aug. 10, 2018), Defendants argue that second-hand exposure to pepper spray is not a serious medical need as a matter of law. The Court of Appeals for the Third Circuit has recognized, however, that injuries stemming from exposure to pepper spray can amount to an Eighth Amendment violation where the injuries "[are] not inconsequential." *Robinson v. Danberg*, 673 Fed. Appx. 205, 212 (3d Cir. 2016). Notably, the injuries addressed in *Robinson* – discomfort, coughing, and being forced to breathe through a towel – are markedly less severe than those alleged by Wright. *Id.*

[6] The Court will consider this declaration despite Wright's failure to attach it to his Amended Complaint. Typically, any amended complaint supersedes (replaces) the original complaint already filed, including any attached exhibits. *See W. Run Student Hous. Assocs. v. Huntingdon Nat'l Bank*, 712 F.3d 165, 171 (3d Cir. 2013). But, at the summary judgment stage, a district court may consider a statement or allegation in a superseded complaint as rebuttable evidence when determining whether summary judgment is proper. *See 188 LLC v. Trinity Industries Inc.*, 300 F.3d 730, 735–36 (7TH Cir. 2002). This same affidavit was also filed in opposition to the Defendants' motion for summary judgment. ECF No. 60-5.

7

unconscious condition, Shick shined a flashlight in his face and yelled, "count time." *Id.* Beatty similarly shined a flashlight on Wright and asked, "are you dead yet?" *Id.* According to Wright, neither Defendant made any attempt to assess his condition or ensure that he received treatment. *Id.*

As to Barnes, Wright's verified complaint alleges that he "continuously pressed the in-cell emergency call button and asked for medical attention" four or five times in the hour following the pepper spray incident. ECF No. 19, ¶¶10-11. Each time, Barnes responded over the in-cell intercom that Wright "was not going to get medical attention," despite Barnes' awareness of Wright's chest pain and asthma-related difficulties. *Id.*

In further support of this claim, Wright submitted a declaration from inmate Malik Mincey, who declared that "on September 8, 2017, at about 8:00 PM an inmate in 1012 cell was sprayed with OC mace. A few minutes later, I heard inmate Wright bang on his door and cry out to the Correctional Officers that he was having an asthma attack and needed medical attention. The officers ignored Wright's call for help." ECF No. 60-5. Mincey also corroborated Wright's averment that Shick and Beatty each shined a flashlight on Wright, asked him a question, received no response, and left the cell without attempting to assist. *Id.*

Both Wright and the Defendants rely upon Wright's medical records as evidence. For example, while those records corroborate Wright's contention that he suffers from asthma, they also indicate that he was medically cleared for exposure to pepper spray on August 18, 2017. ECF No. 60-3. When pepper spray was used against him on September 5, 2017, his medical records indicate that he received treatment for burning eyes but did not exhibit any shortness of breath. *Id.* On the day Wright's neighboring cell was sprayed, medical records reveal that he received treatment from the prison's medical department approximately one hour later, at 9:00 PM. ECF No. 50-1, p. 19. Medical personnel assessed Wright's "wellbeing" and noted that he maintained "good eye contact"

8

and "talked in clear tones." *Id.* The records also state that Wright did not appear to be in medical distress ("[no] s/s distress"). *Id.* Medical personnel assessed Wright again the following day and noted that he was

> asked about breathing treatment due to next door inmate had been sprayed OC spray yesterday. Stated he was SOB, passed out numerous times in his sleep, passed out on floor in middle of night due to spray. [Observed] @ cell door, NAD, breathing easy and non-labored, speech clear and coherent, good eye contact, refused to answer psych questions, focused on wanting breathing tx, [no signs] of distressed noted.

*Id.* Defendants maintain that these notes bely Wright's claims that he was denied medical care during this ordeal.

Additionally, both Parties maintain that the videotape of the incident clearly establishes the veracity of their respective versions of the incident. In their concise statement of material fact, Defendants maintain that the video "showed that Plaintiff showed no ill effects from the OC used on the inmate in the next door cell, and he calmly adjusted his covers and arranged his bed before lying down and going to sleep." ECF No. 49, ¶ 13. Wright, in turn, states that the video footage "does not show what defendants are alleging" but instead "shows exactly what Plaintiff describes in his Complaint." ECF No. 61, ¶ 13.

For certain, when a video supports a movant or nonmovant's version of the facts, a Court must "accept the video's depiction instead of [the opposing party's] account." *Pourmoghani-Esfahani v. Gee*, 625 F.3d 1313, 1315 (11th Cir. 2010); *Scott v. Harris*, 550 U.S. 372, 380-81 (2007) (instructing courts to "view [ ] the facts in the light depicted by the videotape."). In the present case, however, it appears that prison officials failed to preserve the video. On August 6, 2019, during discovery in this action, Wright filed a Motion to Compel Discovery, asking that he be permitted to view the video of the discharge of pepper spray in the neighboring cell. ECF No. 51. The Court conducted a telephone hearing on the motion on August 23, 2019, during which the Court denied the motion

9

to compel to the extent it requested video of the use of OC spray upon the other inmate, but granted the motion "[t]o the extent Defendants are in possession of any video showing Mr. Wright in his cell following the incident." (ECF No. 57, p.15). Defense counsel reported during the hearing that he believed no such video existed but that he would "double-check just to make sure." *Id.* The Court instructed defense counsel not to construe its ruling narrowly but, rather, "[i]f there's something showing events relative to Mr. Wright, either Mr. Wright himself or activity immediately outside of his cell, that should be produced." *Id.* at 18. Defense counsel later reported that technical difficulties had delayed his review of the video of events in the cell next to Wright's. ECF No. 58, p. 2. Regarding the video showing Wright's condition in his own cell after the use of pepper spray, however, counsel reported the following:

> Finally, as for the in-cell camera showing Plaintiff that evening, ***counsel has confirmed that there was such a video and it was saved for a period of time.*** Due to its large file size, it could not be saved to a disc and instead was retained on the DVAR hard drive. Therefore, ***it was available for Capt. Gill to review as part of a grievance response.*** However, the DVAR hard drive was at near capacity, so ***at some point it was deleted*** and is no longer available.

*Id.* (emphasis supplied).

The unavailability of the video is a matter of significant concern to the Court because the record reflects that the video was in the possession of prison personnel who recognized its relevance to Wright's claim, but who nevertheless failed to preserve it. Prison records generated after Wright filed a grievance based upon the events of September 7, 2017, show that prison officials reviewed and relied upon the video when they denied his grievance and his appeal. (ECF No. 50-1). Although Wright had not filed his lawsuit against the Defendants as of that time, prison personnel knew, or certainly should have known, that litigation was possible, if not probable, and that the video constituted relevant evidence. This knowledge triggered a duty to preserve the video.

10

Although the parties have not briefed the issue, the Court notes that spoliation occurs where: (1) the evidence in question was in the spoliating party's control; (2) the evidence is relevant to the claims or defenses in the case; (3) there has been actual suppression or withholding of evidence; and (4) the duty to preserve the evidence was reasonably foreseeable to the spoliating party. *Bull v. United Parcel Serv., Inc.*, 665 F.3d 68, 73 (3d Cir. 2012) (citation omitted). While it would be premature for the Court to determine, on this record, whether spoliation occurred, the unavailability of the video certainly prevents the Court from "accept[ing] the video's depiction instead of [Wright's] account." *Pourmoghani-Esfahani*, 625 F.3d at 1315.

In the absence of clear video evidence to the contrary, the Court concludes that a material dispute exists as to both the severity of Wright's reaction to the pepper spray used on September 7, 2017, and Shick, Beatty, and Barnes' response to Wright's alleged distress. While the medical records support Defendants' version of events, Wright's verified complaint and Mincey's sworn declaration each support Wright's claims. Because the resolution of these material disputes is the province of a jury, Defendants' motion for summary judgment must be denied.

VI. Conclusion

For the reasons set forth above, the Court concludes that a genuine issue of disputed material fact exists as to the Defendants' deliberate indifference. Therefore, the Defendants' motion for summary judgment is denied. SO ORDERED.

Entered this 6th day of March, 2020.

RICHARD A. LANZILLO
United States Magistrate Judge

11